## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00005-RJC-DCK

| | | |
|---|---|---|
| ELIJAH MCCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CHARLOTTE-MECKLENBURG BOARD | ) | |
| OF EDUCATION, | | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss" (Document No. 12). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied without prejudice in part and granted in part.

## I. BACKGROUND

Plaintiff Elijah McClure ("Plaintiff" or "McClure"), initiated this action with the filing of a *pro se* complaint in the Superior Court of Mecklenburg County on June 10, 2019. See (Document No. 1, p. 1, Defendant's "Notice of Removal"). At that time, Plaintiff asserted a negligence claim against Defendant Charlotte-Mecklenburg Board of Education ("Defendant" or "Board"). Id.

After filing a motion to dismiss Plaintiff's *pro se* complaint, Defendant participated in a hearing in Mecklenburg County Superior Court on October 3, 2019 on the motion. Id. The Superior Court granted Plaintiff an extension to file an amended complaint. Id. at p. 2. Plaintiff filed the "First Amended Complaint" through counsel in Mecklenburg County Superior Court on December 3, 2019. (Document No. 3). In the First Amended Complaint, Plaintiff asserted claims

against Defendant for negligence and gross negligence, for violations of Plaintiff's constitutional rights under the 8th and 14th Amendments in violation of 42 U.S.C. § 1983 ("§ 1983"), and for violations of Plaintiff's rights under the North Carolina Constitution at Article I, §§ 15 and 19, and Article IX, § 1.  Id. at pp. 3-5.

Defendant removed this action to the Western District of North Carolina on January 3, 2020, filing a "Notice Of Removal."  (Document No. 1).  Defendant then filed an "Answer" to Plaintiff's First Amended Complaint on January 9, 2020.  (Document No. 4).  On February 18, 2020, Defendant filed a "Motion To Dismiss" Plaintiff's First Amended Complaint.  (Document No. 6).  However, on March 5, 2020, the undersigned denied Defendant's motion to dismiss on account of granting Plaintiff leave to file a second amended complaint.  (Document No. 10). Plaintiff filed his "Second Amended Complaint" on March 9, 2020.  (Document No. 11).  In so doing, Plaintiff did not alter the nature of the three claims alleged in the First Amended Complaint. (Document No. 11, pp. 3-6).

The facts of this case are difficult and tragic.  As detailed in his Second Amended Complaint, Plaintiff's claims arise from an October 2, 2015 fight inside the school building between students at Hopewell High School at the end of the school day.  Id. at p. 2.  Plaintiff alleges that the fight was "broken up by faculty and/or staff members" of the Board, including the principal.  Id.  Plaintiff alleges that the students involved in the fight were then "sent out of the building to the bus lot, unsupervised," despite the Board's awareness of the "students' violent propensities."  Id.  Once in the bus parking lot, "the same group of violent students" allegedly "viciously attacked Plaintiff [] as he waited outside at the bus lot, resulting in traumatic brain injuries to Plaintiff."  Id.  Plaintiff contends that "no faculty or staff from [the Board] broke up the fight," and "it was [the Board's] practice of ejecting violent students outside of the school

facility, rather than detaining them." Id.  He then alleges that he "was placed on the bus and sent home without receiving any medical attention and without any attempt by [the Board] to make contact with his parents." Id.  As a result of the attack, Plaintiff alleges that he has suffered from "the development of neurological medical problems, including but not limited to epilepsy, and [has had to undergo] subsequent surgeries." Id.  Defendant filed an "Answer To Second Amended Complaint" on March 23, 2020.  (Document No. 13).

Defendant filed the pending "Motion To Dismiss" on March 23, 2020.  (Document No. 12).  Plaintiff filed a "Memorandum Of Law In Opposition To Defendant's Motion For Dismissal Of Plaintiff's Second Amended Complaint" on April 1, 2020.  (Document No. 14).  Defendant filed a "Reply To Plaintiff's Opposition Of Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint" on April 8, 2020.  (Document No. 15).  On April 21, 2020, Plaintiff sought leave to file a surreply in support of his opposition to Defendant's motion to dismiss in accordance with Local Rule 7.1(e).  (Document No. 16).  The undersigned granted Plaintiff's motion for leave to file a surreply on May 4, 2020 (Document No. 20), and Plaintiff filed a "Surreply In Support Of His Opposition To Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint" on May 7, 2020.  (Document No. 21).  The motion has now been fully briefed and is ripe for review.

## II.  STANDARD OF REVIEW

**Motion To Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  The plaintiff has the burden of proving that subject-matter jurisdiction exists.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case.  Jones v. Am. Postal Workers

Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

**Motion To Dismiss Under Rule 12(b)(2)**

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence…[W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

<u>Combs</u>, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." <u>Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.</u>, 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." <u>IMO Indus., Inc. v. SEIM S.R.L.</u>, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant…factual conflicts must be resolved in favor of the party asserting jurisdiction…" <u>Id.</u> (internal citations omitted).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 119 (2014). Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).

**Motion To Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992); <u>Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership</u>, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Robinson v. American Honda Motor Co., Inc.</u>, 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

The Board's "Motion To Dismiss" asks the Court to dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6) and N.C. Gen. Stat. § 115C-42. (Document No. 12-1, p. 1). The undersigned will analyze each of Defendant's arguments for dismissal of Plaintiff's claims below.

### A. Plaintiff's Negligence and Gross Negligence Claim Against Defendant

Under North Carolina law, "boards of education are entitled to governmental immunity from lawsuits that allege tortious or negligent conduct unless the Board waived governmental

6

immunity." RM by and through MM v. Charlotte-Mecklenburg Cty. Bd. of Educ., 2017 WL 2115108, at *3 (W.D.N.C. May 15, 2017); see also Magana v. Charlotte-Mecklenburg Bd. of Educ., 645 S.E.2d 91, 92 (N.C. Ct. App. 2007) ("a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority"). Waiver of such immunity occurs "by the act of obtaining" insurance, but "only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. Assertion of the governmental immunity defense "presents a question of jurisdiction," although "North Carolina courts have not resolved whether the sovereign immunity defense challenges personal jurisdiction or subject-matter jurisdiction." Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 700-01 (E.D.N.C. 2009); accord Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

According to an affidavit that Defendant submitted in support of its motion to dismiss, "with respect to claims for personal injury and property damage, CMS [Charlotte-Mecklenburg Schools] had a self-insured retention of $1,000,000 per occurrence" during the 2015-2016 fiscal year. (Document No. 12-2, p. 1). However, "CMS did not have any liability insurance during [the 2015-2016 fiscal year] covering claims for personal injury or property damage of $1,000,000 or less." Id. For claims above $1,000,000, CMS had two "excess liability policies" – the Genesis Policy and the Great American Policy – under which coverage "for personal injury or property damage is triggered only if CMS becomes liable for, and pays, the first $1,000,000 for an occurrence." Id. at p. 2. The Genesis Policy provides coverage once CMS pays the first $1,000,000 of a claim, and it provides coverage up to $5,000,000. Id. Beyond that, the Great American Policy would only provide coverage "if coverage under the Genesis Policy is exhausted" – that is, for claims in excess of $6,000,000. Id. Because of governmental immunity, the affidavit

explains that "CMS will never be liable for, and will never pay, the first $1,000,000 of that claim, which is a necessary condition to coverage under the [excess liability policies]." Id. at p. 3. The Genesis policy specifically states that it "is not intended by the Insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 115C-42." (Document No. 12-3, p. 19).

With respect to Plaintiff's tort claims against Defendant for negligence and gross negligence, Defendant contends that the Court lacks subject-matter jurisdiction and personal jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) to hear such claims because the Board did not waive its governmental immunity under N.C. Gen. Stat. § 115C-42. Id. at pp. 3-5. Defendant contends that "the Board's purchase of excess policies with self-insured retention programs did not waive governmental immunity." Id. at p. 5. Defendant cites case law to support this assertion. Id. at pp. 4-5. Given that Defendant "cannot be required to pay any part of the self-insured retention of $1,000,000[,]…the excess policies never provide coverage if the Board is otherwise immune from the claim." Id. at p. 5.

Plaintiff, on the other hand, counters Defendant's assertions by pointing to language in one of the Board's excess insurance policies (the Genesis policy) that it alleges indicates that Defendant is a "named insured[] on a $1,000,000 underlying policy for the CMS Law Enforcement Division," and this policy – the "Indian Harbor" policy – "may be used to pay the retained limit" on claims "arising out of the Insured's law enforcement duties." (Document No. 14, pp. 3-4). In Plaintiff's view, "[s]chools are tasked with performing law enforcement functions," which include "protecting students from harm." Id. at p. 4. Plaintiff also contends that "School Resource Officers [delegated to Charlotte-Mecklenburg schools by the Charlotte-Mecklenburg Police Department] ('SROs') were presumably present on campus during the incident at issue and were tasked with

guarding the safety of the Plaintiff." Id. at p. 5. Thus, since Plaintiff alleges that "the instant matter arises, at least in part, out of Defendant's negligent and or reckless law enforcement duties," the Indian Harbor policy was triggered. Id. at p. 4. McClure contends that "where there is potential insurance coverage for Defendant's [self-insured retention], Defendant's immunity defense is without merit." Id. at p. 5.

Defendant rebuts Plaintiff's argument by first highlighting that the Indian Harbor policy is not "an underlying policy of the Genesis Insurance policy." (Document No. 15, p. 2). Defendant contends that "[t]he Indian Harbor policy only covers the Board's sworn law enforcement officers, [] who are performing their official duties" – and "no [sworn law enforcement officers of the Board were] working at Hopewell High School" during the incident at issue. Id.; see also (Document No. 15-1, p. 2) ("CMS also had a separate liability insurance [policy] for sworn CMS law enforcement officer[s] that covers claims against those sworn CMS officers that arise out of the performance of their law enforcement duties"). The affidavit that Defendant attached to its response to Plaintiff's reply to the motion to dismiss indicates that the Indian Harbor policy "does not provide insurance coverage for any claimed self-insured retainage." (Document No. 15-1, p. 2). Defendant further undermines Plaintiff's arguments by asserting that Plaintiff's reference to SROs presumably being present on the high school's grounds "is baseless because CMPD officers are not sworn law enforcement for CMS and are not covered under the Indian Harbor policy." (Document No. 15, p. 2). Although irrelevant if the SROs are not covered by the Indian Harbor policy, Defendant notes that "CMPD officers were not assigned to serve as School Resource Officers [] at Hopewell during the 2015-2016 academic year." Id. However, Huntersville police officers did serve as SROs at Hopewell High School during the 2015-2016 school year, but the

affidavit attached to Defendant's reply brief indicates that they "were not sworn law enforcement officers for CMS." (Document No. 15-1, p. 2).

Plaintiff's surreply takes issue with Defendant's position that the Indian Harbor policy was not an "underlying policy" for the Genesis policy by pointing to language in the Genesis policy that suggests that it, in fact, *was* an underlying policy. (Document No. 21, pp. 1-2); see (Document No. 12-3, p. 18). Moreover, Plaintiff asserts that the policy does not *only* cover the activities of "sworn" law enforcement officers. (Document No. 21, pp. 3-4). Even if this were the case, Plaintiff contends, sworn Huntersville police officers that are contracted to work for CMS would "by extension, [] be sworn officers doing work for CMS…[making] them de facto CMS officers." Id. at p. 4.

The undersigned acknowledges this District Court's history of construing N.C. Gen. Stat. § 115C-42 "against finding a waiver of sovereign immunity," as "[t]he purchase of a policy of insurance alone is not enough to waive governmental immunity." Collum v. Charlotte-Mecklenburg Bd. of Educ., 2010 WL 702462, at *7 (W.D.N.C. Feb. 23, 2010); accord Grier v. Gray, 2018 WL 4620628, at *5 (W.D.N.C. Sept. 26, 2018); Sutton v. Charlotte-Mecklenburg Schs., 2018 WL 3637366, at *6 (W.D.N.C. July 31, 2018); and RM, by and through MM, 2017 WL 2115108, at *4. So, too, has the North Carolina Court of Appeals found no waiver of immunity where the Board of Education possessed excess liability policies for claims exceeding $1,000,000 but only a self-insured retention up to that amount. Irving v. Charlotte-Mecklenburg Bd. of Educ., 2013 WL 5508370, at *2-*3 (W.D.N.C. Oct. 1, 2013) ("because the school board had not purchased liability insurance for any amount below the $1,000,000 coverage limit, it had not waived its immunity for any damages under $1,000,000"); Magana, 645 S.E.2d at 93 (same).

The facts of this case, however, do not exactly mirror the above cases. Here, there is a factual issue that is too close to call at this motion to dismiss stage of the litigation: whether the Indian Harbor policy was triggered and therefore provided indemnification to the Board for the self-insured retention amount. If the Indian Harbor policy was triggered and could provide indemnification, this might effect a waiver of the Board's immunity because the Board may thus have had underlying insurance. See N.C. Gen. Stat. § 115C-42. Defendant provides an Affidavit of Betty Coulter, who administers "the insurance and self-insured retention programs for the" Board. (Document No. 15-1, p. 1). She insists that "the [Indian Harbor] policy does not provide insurance coverage for any claimed self-insured retainage." Id. at p. 2. However, the language of the Genesis policy – which references the Indian Harbor policy – indicates that the Indian Harbor policy "may be used to pay the retained limit caused by an occurrence or claim during this policy period arising out of the Insured's law enforcement duties." (Document No. 12-3, p. 18). Furthermore, in declining to resolve at this stage whether the Indian Harbor policy could indemnify the Board for the self-insured retention amount, the Court also declines to take a position on the scope of who constitutes a "sworn CMS law enforcement officer" who would be covered by the Indian Harbor policy. (Document No. 15-1, p. 2).

Without further discovery, resolution of whether to dismiss this negligence claim for lack of either subject-matter jurisdiction or personal jurisdiction is not possible – and in fact, the presence of such a significant factual dispute makes a recommendation of dismissal inappropriate. Thus, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's negligence and gross negligence claim be denied without prejudice, with the potential to raise the argument at a later stage of the litigation.

### B. Plaintiff's § 1983 Claim Against Defendant

Defendant argues that Plaintiff's § 1983 claim against Defendant for violation of his clearly established rights under the 8th and 14th Amendments to the United States Constitution should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Plaintiff pleads that the Board violated five of his clearly established rights, including: (1) "[t]o be free from cruel and unusual punishment;" (2) "[t]o be free from deliberate indifference to a substantial risk of serious harm;" (3) "[t]o be free from state created danger;" (4) "[t]o bodily integrity;" and (5) "[t]o adequate medical care and to be free from deliberate indifference to medical needs." (Document No. 11, p. 4). First, Defendant contends that Plaintiff has failed to adequately plead "an identifiable municipal policy or custom that caused [his] alleged injury." (Document No. 12-1, p. 5). Second, Defendant argues that a "school board [cannot] be liable under § 1983 on a theory of *respondeat superior*," implying that it believes that Plaintiff is alleging that the Board should be held liable for the acts of its employees that "fail[ed] to properly supervise [students]" – which, it contends, the statute prohibits. Id. at pp. 6-7. Defendant also points out that Plaintiff "makes vague references to 'unconstitutional misconduct' without sufficient details to support a claim." Id. at p. 7.

Plaintiff contends that he has identified a policy traceable to the Board that caused the injury – "a policy and/or practice of evicting known violent actors from the premises as opposed to detaining them." (Document No. 14, p. 7). Defendant suggests that this identified "policy" is no more than "Plaintiff's personal 'belief' [that] rests entirely on conjecture and is insufficient to raise a 'Monell claim' which requires that Plaintiff has" the burden to show an official policy adopted by Defendant to make a viable § 1983 claim. (Document No. 15, p. 4).

Plaintiff further counters that it has sufficiently stated a claim under § 1983 because Defendant "created the risk of bodily injury to [Plaintiff] by releasing knowingly violent students

out of the building to the bus lot, unsupervised." (Document No. 14, p. 6).  He alleges that, at least under the state-created danger theory of  § 1983 liability, his claim is sufficient under controlling case law because the Board "did not merely maintain a pre-existing risk to [McClure], but instead took affirmative actions which created an extremely dangerous situation" – all "with a deliberate indifference for [McClure's] safety and bodily integrity."  Id.  Defendant takes issue with this characterization of what took place, contending that the case law requires that a defendant commit some "affirmative act" to be liable under the state-created danger theory of § 1983 liability rather than just "create[] or enhance[] the circumstances" leading to the injury.  (Document No. 15, p. 3).

There are a few issues that the undersigned will analyze below.  First, as to Plaintiff's § 1983 claim for violation of various of his clearly established rights, the Court highlights that the framework in Monell v. Dep't of Social Servs. of City of New York is applicable as to each alleged violation.  436 U.S. 658, 690 (1978).  If a Plaintiff brings suit under § 1983 against a school board, Plaintiff must show that for every violation, "the alleged injury was caused by an identifiable municipal policy or custom."  Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 522 n.3 (4th Cir. 2000).  Second, even if the Plaintiff adequately alleges the existence of a policy or custom, if the claim (as to some or all of the alleged constitutional violations) is legally deficient for another reason – for example, because of failure to meet the standard for pleading a successful claim for deprivation of some clearly established constitutional right – then that theory of liability under the § 1983 claim will not survive.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Municipalities and local governments, which include school boards, can be sued pursuant to §

13

1983.  Monell, 436 U.S. at 690; Riddick, 238 F.3d at 522 n.3.  In order to sue a municipality or school board under § 1983, Plaintiff must show that "the alleged injury was caused by an identifiable municipal policy or custom." Riddick, 238 F.3d at 522.  In identifying such policy or custom, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality;" rather, a plaintiff must show that the municipality "through its *deliberate* conduct" was the "moving force" that caused the alleged injury. Bd. of Cty. Comm'rs of Bryan Cty, Okl. v. Brown, 520 U.S. 397, 404 (1997).  Policy "may be found in written ordinances and regulations, [] in certain affirmative decisions of individual policymaking officials, [] or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  All of these manifestations of policy occur in "formal decisionmaking channels" – including the policy by omission. Id.  Custom, on the other hand, can arise informally, "if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. (internal citations and quotations omitted).

Nonetheless, at the pleading stage, the Supreme Court has confirmed that the notice pleading requirements in the Federal Rules of Civil Procedure at Rule 8(a)(2) still apply in the context of a claim against a municipality under Monell – there is no "heightened pleading standard" for these § 1983 claims. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  According to the Fourth Circuit, with respect to the sufficiency of pleading a policy or custom, the Leatherman decision indicates that "[t]here is no requirement that [a Plaintiff] detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994).  Thus, so

long as a Plaintiff "alleges the existence" of a policy or custom that "proximately caused" the constitutional violation of clearly established rights, at the pleading stage, that is all that is required to survive a motion to dismiss. Id. at 340.

Plaintiff's Second Amended Complaint identifies three policies or customs by which it purports to make out a viable § 1983 claim against the Board. (Document No. 11, p. 5). These include: (1) "ejecting known violent students out of the interior school facility and outside without necessary supervision;" (2) "failing to detain known violent students who were recently engaged in violent altercations and instead escorting them to the exterior of school property without adequate supervision;" and (3) "not providing medical attention to students harmed on campus." Id. Under the standard announced by the Leatherman Court, Plaintiff has surely pleaded a sufficient claim under Monell to put the Board on notice of the allegations against it – Plaintiff identifies three policies or customs and indicates that such violations of his rights directly and proximately resulted in his injuries. (Document No. 11, pp. 5-6). Thus, at least as to this first step of the analysis, Plaintiff's claim is sufficient under the Monell standard.

Despite meeting the minimum requirements required by Monell, as to one of his theories of liability under the § 1983 claim, Plaintiff has failed to make out a claim for violation of his substantive due process rights under the 14th Amendment pursuant to the state-created danger doctrine. Protected constitutional rights that may be violated and thus the subject of a § 1983 claim "include a Fourteenth Amendment substantive due process right against state actor conduct that deprives an individual of bodily integrity." Doe v. Rosa, 795 F.3d 429, 436-37 (4th Cir. 2015). However, "the Fourteenth Amendment does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties." Pinder v. Johnson, 54 F.3d 1169, 1174 (4th Cir. 1995). Indeed, "a State's failure to protect an individual against private

15

violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cty. Dep't of Social Servs., 489 U.S. 189, 197 (1989). Thus, without "[s]ome sort of confinement of the injured party [by the State]—incarceration, institutionalization, or the like," there is no "affirmative duty" to protect under the Constitution. Pinder, 54 F.3d at 1175.

The Fourth Circuit has explicitly held that the custody context is not triggered "[w]hen a student attends a public school" because "his liberty is not restrained to the extent contemplated in DeShaney," for "[a]ttending school is not the equivalent of incarceration or institutionalization." Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Educ., 3 F. App'x 25, 31 (4th Cir. 2001). Although Plaintiff attempts to distinguish Pinder and Rosa, both of those cases serve only to highlight the insufficiency of Plaintiff's claim under the state-created danger theory of § 1983 liability. In the "school violence context," the Fourth Circuit has noted that "school officials must act with deliberate indifference before there is liability for student-on-student attacks," which means that "the school must engage in intentional or reckless affirmative conduct that shocks the conscience of federal judges." Stevenson, 3 F. App'x at 31.

Under established Fourth Circuit precedent, "[a] key requirement for liability under the state-created danger doctrine is that the state actor increase or create the danger through affirmative conduct." Rosa, 795 F.3d at 440. This creation or increase of danger through affirmative conduct is a high bar for the imposition of liability – it requires that "[t]he state, through its affirmative acts, must 'itself create [] the dangerous situation that resulted in a victim's injury,' such that it becomes much more akin to an actor itself directly causing harm to the injured party.'" Id. (quoting Pinder, 54 F.3d at 1177). "No constitutional liability exists where the State actors had no hand in creating the danger but [simply] stood by and did nothing when suspicious circumstances dictated

16

a more active role for them." Rosa, 795 F.3d at 440-41 (quoting Butera v. District of Columbia, 235 F.3d 637, 650 (D.C. Cir. 2001)) (internal quotations omitted).

Here, Plaintiff's Second Amended Complaint makes clear that faculty at Hopewell High School in fact *did* intervene, trying to reduce the danger – they broke up the fight. Releasing students to the bus parking lot after the fight when it was dismissal time was not the kind of affirmative act on the part of the Board that case law indicates triggers liability under the state-created danger doctrine. After breaking up the fight, releasing students to go home is akin to doing nothing – which is insufficient to trigger liability. While hindsight might suggest that doing *more* than just breaking up the fight might have been prudent, it is not the role of the Court to decide what course of action would have best protected the safety of all students. Rather, the Court must decide a narrow question: were Plaintiff's constitutional rights violated? Here, they were not. The undersigned concludes that Defendant did not commit any affirmative act here, as the affirmative act concept "should not extend beyond the context of immediate interactions between the [state actor] and the plaintiff." Rosa, 795 F.3d at 441.

As Pinder makes clear, it is not an affirmative act triggering § 1983 liability to make a decision "that makes injury at the hands of a third party more likely," and it is not a creation of danger to "simply fail[] to provide adequate protection from" the source of the danger. 54 F.3d at 1175. Here, the Board's alleged policy of releasing violent students to the parking lot is not sufficiently "deliberate" with respect to Plaintiff's risk of injury from such an act to incur liability on a state-created danger theory of § 1983. Indeed, this situation resembles one where McClure is claiming a right to "protection from lions at large" (to which he is not entitled under the law from the school board) rather than one in which the Board threw *him* "to the lions" (for which he would have a claim under the state-created danger theory). Pinder, 54 F.3d at 1177. Here, it was the other

17

students that caused his injury – and while releasing violent students into a parking lot with other students may have been an extremely poor decision in hindsight, that is not enough to satisfy the high standard for classification as an "affirmative act," as defined by the case law.

Thus, since four of the five clearly established rights that Plaintiff alleges in his Second Amended Complaint rely upon the state-created danger theory of liability – freedom from "cruel and unusual punishment," freedom from "deliberate indifference to a substantial risk of serious harm," freedom from "state created danger," and a right to "bodily integrity – the only theory of liability that will withstand 12(b)(6) dismissal for the § 1983 claim is that Plaintiff was unconstitutionally deprived of "adequate medical care and [subjected to] deliberate indifference to medical needs." (Document No. 11, p. 4).

Consequently, the undersigned respectfully recommends that Plaintiff's § 1983 claim against the Board be partially dismissed – at least where the claim relies upon the theory of state-created danger. However, given that Plaintiff has successfully pled the required elements of a <u>Monell</u> claim, the undersigned respectfully recommends that his § 1983 claim proceed on the theory that he was unconstitutionally deprived of "adequate medical care and [subjected to] deliberate indifference to medical needs." (Document No. 11, p. 4).

### C. Plaintiff's Claim Against Defendant Under the North Carolina Constitution

Defendant argues that Plaintiff's claim pursuant to Article I, §§ 15 and 19, and Article IX, § 1 of the North Carolina Constitution should be dismissed. First, Defendant contends that with respect to the claim under Article I, § 15, and Article IX, § 1, there is no "private right of action for damages under the North Carolina Constitution against local board[s] of educations[sic] for the denial of the privilege of education." (Document No. 12-1, p. 7). Furthermore, Defendant contends that the educational rights secured by these sections of the North Carolina Constitution

"relate [only] to the nature, extent, and quality of educational opportunities." Id. (quoting Doe v. Charlotte-Mecklenburg Bd. of Educ., 731 S.E.2d 245, 252-53 (N.C. Ct. App. 2012)). As to Plaintiff's claim pursuant to Article I, § 19, Defendant contends that Article I, § 19, "is not a vehicle for plaintiffs to allege constitutional torts against governmental entities and employees." (Document No. 12-1, p. 9).

Plaintiff, on the other hand, argues that his claims under the North Carolina Constitution must be allowed to proceed if the Court dismisses his negligence claim because "if a claim is susceptible to an immunity defense and a similar claim may be brought under the State Constitution," the constitutional claims must survive. (Document No. 14, p. 7). With specific reference to Article I, § 19, Plaintiff does nothing more than reiterate his contention in the Second Amended Complaint that he "has been deprived of his liberty, interest and privilege in a school environment free from abuse, harassment, and psychological harm." Id. at p. 8.

The undersigned is convinced by Defendant's persuasive arguments that Plaintiff's claims under Article I, §§ 15 and 19, and Article IX, § 1, are inappropriate and should be dismissed both because (1) there is no private right of action to assert the denial of the right to the privilege of education under the North Carolina Constitution; and (2) none of the constitutional provisions cited, even assuming that there *was* a private right of action to assert claims based on the denial of rights under all such provisions, provides relief "for the alleged harm that Plaintiff has pled." (Document No. 15, p. 4). Plaintiff's proposition that where there is no adequate state remedy because of sovereign immunity, a Plaintiff's claim "stating a violation of his North Carolina constitutional rights cannot be dismissed" is an inaccurate characterization of the law as explained below. (Document No. 14, p. 8).

19

As stated above, the undersigned is recommending that the negligence claim against the Board survive. Still, the Court points out that the Plaintiff's argument is incorrect that in the hypothetical scenario in which the Court *did* dismiss the negligence claim, his state constitutional claims must survive dismissal. Here, as in <u>Collum</u>, Plaintiff has "had the opportunity to enter the courthouse doors and present [his] constitutional claim," (which is all that the case cited by Plaintiff requires for an adequate remedy to exist under state law – <u>Craig v. New Hanover Bd. of Educ.</u>, 678 S.E.2d 351, 355 (N.C. 2009)). 2010 WL 702462, at *3. The Court has now concluded that such constitutional claim fails to state a claim upon which relief may be granted because "no North Carolina Court has recognized a private right of action for the denial of the right to the privilege of education." 2010 WL 702462, at *3; <u>accord</u> <u>Frye v. Brunswick Cty. Bd. of Educ.</u>, 612 F. Supp. 2d 694, 707 (E.D.N.C. 2009); and <u>Davis v. Blanchard</u>, 175 F. Supp. 3d 581, 593 (M.D.N.C. 2016). Article I, § 15, and Article IX, § 1 of the North Carolina Constitution relate merely "to the nature, extent, and quality of the educational opportunities made available to students in the public school system." <u>Doe</u>, 731 S.E.2d at 252-53. The North Carolina Court of Appeals has found "no constitutional right for plaintiffs to recover from defendant for injuries sustained from a negligent failure to remain aware of and supervise the conduct of other public school students." <u>Mack v. Bd. of Educ. of Public Schs. of Robeson Cty.</u>, 748 S.E.2d 774 (N.C. Ct. App. 2013). The facts here are indistinguishable – Plaintiff's allegations of Defendant's "deliberate indifferen[ce] to [his] rights in failing to protect him" that "depriv[ed him] of his rights to liberty and education" simply fail to state a claim under the North Carolina Constitution. (Document No. 11, p. 6).

With respect to Article I, § 19, Plaintiff's claim must also fail based on "well-established North Carolina law" interpreting this provision in a similar context. This constitutional provision

"'guarantees [] due process rights[]' and has been interpreted as being similar to the due process clause of the Fourteenth Amendment to the Federal Constitution." Doe, 731 S.E.2d at 253 (citing Rhyne v. K-Mart Corp., 594 S.E.2d 1, 15 (N.C. 2004)).  Rights under this provision are "simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Doe, 731 S.E.2d at 253 (quoting Daniels v. Williams, 474 U.S. 327 (1986)).  Thus, the undersigned respectfully recommends that Plaintiff's constitutional claim pursuant to Article I, §§ 15 and 19, and Article IX, § 1 of the North Carolina Constitution should also be dismissed.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss" (Document No. 12) be **DENIED without prejudice in part** as to Plaintiff's negligence and gross negligence claim and his § 1983 claim on the theory that his right to adequate medical care and to be free from deliberate indifference to medical needs was violated and **GRANTED in part** as to Plaintiff's § 1983 claim on the state-created danger theory of liability and his claims under the North Carolina Constitution.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude

the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 18, 2021

David C. Keesler
United States Magistrate Judge