# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-00005-KDB-DCK

| | |
|---|---|
| **Elijah McClure,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| **Charlotte-Mecklenburg Board of Education,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (Doc. No. 12), the Memorandum and Recommendation of the Honorable Magistrate Judge David C. Keesler ("M&R") entered March 19, 2021, (Doc. No. 33), and Defendant's Objection to the M&R (Doc. No. 34). The Court has reviewed this motion, the parties' briefs, and other pleadings of record. As discussed below, the Court determines after its *de novo* review that the recommendation to deny in part and grant in part Defendant's motion is partially correct and in accordance with law. Therefore, the findings and conclusions of the Magistrate Judge will be **ADOPTED** in part**, MODIFIED** in part, and the Motion to Dismiss will be **DENIED** in part and **GRANTED** in part. The Court will dismiss Plaintiff's claims under 42 U.S.C. § 1983 and under the North Carolina Constitution. However, the negligence and gross negligence claims will be allowed to proceed.

# I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). Yet the Court does not perform a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject-matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited, and the federal courts may exercise only that jurisdiction which

Congress has prescribed." *Chris v. Tenet*, 221 F.3d 648, 655 (4th Cir. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond*, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Mere allegations of in personam jurisdiction are sufficient for a party to make [a] prima facie showing." *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." *IMO Indus., Inc. v. SEIM S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant…factual conflicts must be resolved in favor of the party asserting jurisdiction…" *Id.* (internal citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually

sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this way, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting Ashcroft, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. DISCUSSION

Plaintiff seeks to recover damages for injuries sustained during an October 2015 fight between students at Hopewell High School. Plaintiff has filed claims for (1) negligence and gross negligence under North Carolina tort law; (2) violations of his clearly established rights under the United States Constitution under 42 U.S.C. § 1983; and (3) violations of his rights under Article I, §§ 15 and 19 and Article IX, § 1 of the North Carolina Constitution. In its

Motion to Dismiss, Defendant moves to dismiss all the claims, and now objects to the Magistrate Judge's recommendation that the motion be denied in part and granted in part.

Defendant offers two grounds for its objection. First, it claims that Defendant's purchase of an excess insurance policy for its law enforcement activities does not waive governmental immunity, and it is therefore immune from claims for negligence and gross negligence. Second, Defendant claims Plaintiff's sole remaining 42 U.S.C. § 1983 claim alleging a constitutional deprivation of adequate medical care and deliberate indifference to medical needs should be dismissed because the Eight Amendment is inapplicable to the Plaintiff and a claim cannot proceed under the Fourteenth Amendment because Plaintiff has not shown either a "special relationship" between the Plaintiff and Defendant or a "state created danger" as required for such claims.

A.  Negligence Claims (Governmental Immunity)

Defendant's first argument is that it is entitled to governmental immunity from liability for Plaintiff's negligence and gross negligence claims and thus this Court lacks subject matter jurisdiction or personal jurisdiction.[1] Under North Carolina law, "boards of education are entitled to governmental immunity from lawsuits that allege tortious or negligent conduct unless the Board waived governmental immunity." *RM by and through MM v. Charlotte-Mecklenburg Cty. Bd. of Educ.*, 2017 WL 2115108, at *3 (W.D.N.C. May 15, 2017); *see also Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 92 (N.C. Ct. App. 2007) ("a county board of education is a governmental agency and is therefore not liable in a tort or negligence action

---

[1] The assertion of governmental immunity "presents a question of jurisdiction," although "North Carolina courts have not resolved whether the sovereign immunity defense challenges personal jurisdiction or subject-matter jurisdiction." *Frye v. Brunswick Cty. Bd. of Educ.*, 612 F. Supp. 2d 694, 700-01 (E.D.N.C. 2009); *accord Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

except to the extent that it has waived its governmental immunity pursuant to statutory authority"). Waiver of this immunity occurs "by the act of obtaining" insurance, but "only to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42.

Further, the purchase of excess policy insurance alone does not waive governmental immunity. *See Magana.*, 645 S.E.2d at 92-93; *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 2013 WL 5508370, at *2-*3 (W.D.N.C. Oct. 1, 2013) ("because the school board had not purchased liability insurance for any amount below the $1,000,000 coverage limit, it had not waived its immunity for any damages under $1,000,000").

Defendant has several insurance policies that are relevant to this issue. For claims above $1,000,000, Defendant has two "excess liability policies," the Genesis Policy and the Great American Policy. These policies provide coverage "for personal injury or property damage… if CMS becomes liable for, and pays, the first $1,000,000 for an occurrence." (Document No. 12-2, p. 2). The Genesis Policy provides coverage up to $5,000,000 and the Great American Policy provides coverage if the claim is more than $6,000,000. *Id*. The Genesis policy specifically states that it "is not intended by the Insured to waive its governmental immunity." (Document No. 12-3, p. 19). However, Defendant also has a $1,000,000 policy– the "Indian Harbor" policy – that can be used to pay the "retained limit" on claims arising out of the Defendant's "law enforcement duties." (Document No. 14, p. 3-4). The parties dispute whether the Indian Harbor policy is an underlying or excess policy. Accordingly, governmental immunity hinges on whether the Indian Harbor policy is an underlying policy and therefore provides indemnification to the Board or whether it is merely an excess policy. If the Indian Harbor policy is triggered, it would waive the Board's immunity. *See* N.C. Gen. Stat. § 115C-42.

The Plaintiff contends schools are tasked with performing law enforcement functions, which include "protecting students from harm." Thus, Plaintiff argues that because this matter arises, at least in part, out of Defendant's negligent and or reckless law enforcement duties, the Indian Harbor policy was triggered as it covers the Board for claims "arising out of the Insured's law enforcement duties." (Doc. No. 14 p. 4-5). Defendant responds that the Indian Harbor Policy is simply an excess policy, which only covers the Board's sworn law enforcement officers, (*see* Doc. Nos. 12, 34), and because no sworn law enforcement officers were at Hopewell High School during the incident, the policy is not triggered. (Doc. No. 15).

Yet, the language of the Genesis policy suggests that the Indian Harbor policy may be an underlying policy. It states the Indian Harbor policy "may be used to pay the retained limit caused by an occurrence or claim during this policy period arising out of the Insured's law enforcement duties." (Document No. 12-3, p. 18). Again, Defendant disputes this argument, providing an affidavit from the Board's insurance plan administrator who insists that "the [Indian Harbor] policy does not provide insurance coverage for any claimed self-insured retainage." (Doc. No. 15-1 p. 1-2). Still, this affidavit does not change the plain language of the Indian Harbor policy and the Genesis policy, which taken together seem to contradict the administrator's assertion. In any event, at the motion to dismiss stage, the Court must construe all reasonable inferences from the disputed facts in favor of the Plaintiff's allegation of jurisdiction. Therefore, the Court adopts the M&R's recommendation that Defendant's motion to dismiss Plaintiff's negligence and gross negligence claims be denied.

B. Section 1983 Claim

Second, Defendant argues the M&R erroneously concluded that Plaintiff's 42 U.S.C. § 1983 claim alleging a constitutional deprivation of adequate medical care and deliberate

indifference can proceed.[2] The Supreme Court has held that "a [s]tate's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989). There are, however, two recognized exceptions to this general rule. *See Stevenson v. Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 30 (4th Cir. 2001). First, when a state has a special relationship with an individual, it has an affirmative duty to protect the individual from harm inflicted by third parties. The Supreme Court has defined a "special relationship" as:

> When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by . . . the Due Process Clause. . .. It is the State's affirmative act of restraining the individual's freedom to act on his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty -- which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney,* 489 U.S. at 200. With respect to public school students, the Fourth Circuit has held "[w]hen a student attends public school, his liberty is not restrained to the extent contemplated in *DeShaney* [because] [a]ttending school is not the equivalent of incarceration or institutionalization." *Stevenson*, 3 F. App'x at 31 (citing *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982) (Fourteenth Amendment imposes a duty upon the state to protect involuntary committed, mentally ill patients)). Thus, although Courts have found that a school acts in a "parental role" while a student attends school, the school has not assumed full-blown responsibility for the student's care. *Id*. Parents retain the capacity to provide care for the child, and that child can seek their help and protection. *Id* (citing *Doe v. Claiborne Cty.*, 103 F.3d

---

[2] The M&R's dismissal of the other claims under 42 U.S.C. § 1983 has not been challenged. (*See* Doc. No. 35 p. 8).

495, 509 (6th Cir. 1996)). As a result, the state is not constitutionally liable for preventing student-on-student violence just because it operates the school at which the violence takes place. *Id*.

The second exception to the general rule that a state is not responsible for private violence is that a state will be liable for the acts of third parties when the state itself creates the danger. *See DeShaney*, 489 U.S. at 201. The M&R correctly noted that, under established Fourth Circuit precedent, "[a] key requirement for liability under the state-created danger doctrine is that the state actor increase or create the danger through affirmative conduct." *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2015). The creation or increase of danger through affirmative conduct is a high burden for liability. It requires that "[t]he state, through its affirmative acts, must 'itself create [] the dangerous situation that resulted in a victim's injury,' such that it becomes much more akin to an actor itself directly causing harm to the injured party.'" *Id*. (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995)). Liability does not arise when the state does nothing in the face of danger. *See id*. at 203. Therefore, simply failing to provide protection from danger does not implicate the state in the harm caused by third parties. *See Pinder*, 54 F.3d at 1175. For example, in *Pinder*, the Fourth Circuit found an officer's "affirmative" promise that a woman's ex-boyfriend would spend the night in jail, a promise which turned out to be false and led to the death of the woman's three children, was purely a claim resting on an "omission" rather than an affirmative act and thus not a cognizable constitutional claim. *Pinder*, 54 F.3d at 1176. Keeping this high standard in mind, Plaintiff's allegation that the school imprudently released students into a parking lot at a standard dismissal time after breaking up an in-school fight and then allowed Plaintiff to board the bus with his injuries from the subsequent fight does

not rise to the level of affirmative action required to trigger liability under the state-created danger doctrine.

Furthermore, Courts have held that the Eighth Amendment's protection of providing adequate medical care applies only to those who are incarcerated, detained, or being punished by the government. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (Elementary principles of the Eighth Amendment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration.") *see also*, *DeShaney,* 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the state] has imposed on his freedom to act on his own behalf.").

In sum, Plaintiff has failed to establish either exception to the general rule that a state's failure to protect an individual against private violence does not create a constitutional violation. Moreover, he has failed to show why the right to adequate medical care under the Eighth Amendment is applicable. Thus, Plaintiff's remaining 42 U.S.C. § 1983 claim will be dismissed.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED** in part **and DENIED** in part**;**
2. Plaintiffs' claims under 42 U.SC. § 1983 are dismissed;
3. Plaintiff's claims under Article I, §§ 15 and 19, and Article IX, § 1 of the North Carolina Constitution are dismissed;

4. Defendant's motion to dismiss Plaintiffs' negligence and gross negligence claims is denied; and

5. This case shall proceed towards a resolution of the merits of Plaintiffs' remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**

Kenneth D. Bell
United States District Judge

Signed: February 1, 2022